1  LEXINGTON LAW GROUP
   Mark N. Todzo (State Bar No. 168389)
2  Lucas Williams (State Bar No. 264518)
   503 Divisadero Street
3  San Francisco, CA  94117
   Telephone:  (415) 913-7800
4  Facsimile:  (415) 759-4112
   mtodzo@lexlawgroup.com
5  lwilliams@lexlawgroup.com

6  Attorneys for Plaintiff
   DUSTIN MAGILL
7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  DUSTIN MAGILL, on behalf of himself and all   Case No.  3:19-cv-00450-JCS
    others similarly situated,
13                                                 __FIRST AMENDED CLASS ACTION__
                                                   __COMPLAINT__
                              Plaintiff,
14                                                 **DEMAND FOR JURY TRIAL**
         vs.
15

16  L'OREAL USA, INC.; BAUSCH HEALTH
    COMPANIES INC.; and DOES 1-20,
17
                              Defendants.
18

19

20

21

22

23

24

25

26

27

28

Plaintiff Dustin Magill ("Plaintiff"), on behalf of Himself and those similarly situated, based on information and belief and investigation of counsel, except for information based on personal knowledge, hereby alleges:

## INTRODUCTION

1.      A substantial portion of the population of the United States suffers from eczema. Approximately 31.6 million Americans exhibit symptoms of eczema, and at least 17.8 million individuals experience moderate to severe eczema.  This creates a high demand for products that promise to treat or mitigate eczema and the uncomfortable itching, dryness, skin sensitivity, and rashes caused by this disease.

2.      Defendants L'Oreal, USA, Inc., Bausch Health Companies Inc. (formerly known as Valeant Pharmaceuticals), and others unknown to Plaintiff at this time (collectively, "Defendants"), advertise, market, label, sell, and represent their skin care products as drugs that treat or mitigate eczema and its symptoms.  In particular, Defendants sell products under the brand name "CeraVe®."  This lawsuit concerns four of Defendants' CeraVe® products: Eczema Soothing Body Wash, Eczema Body Wash, Eczema Soothing Creamy Oil, and Eczema Creamy Oil (collectively, the "Products").  These products all prominently feature on the front label the word "Eczema" and other representations that indicate that the products are drugs that will treat or mitigate eczema and its symptoms.  Unfortunately for consumers, the Products do not meet any of the requirements for being sold as eczema drugs under California law.

3.      California law defines "drugs" as products that are intended to: (1) treat or mitigate a disease; or (2) affect the structure or function of the body.  *See* Cal. Health & Safety Code § 109925(a)(2) & (3); *see also* 21 U.S.C. § 321(g)(1)(B) and § 321(g)(1)(C).  Whether a product qualifies as a drug depends on its intended use as defined by the claims made on or about such product.  A product that uses the name of a specific disease in its name is a drug because it "suggest[s] treatment or prevention of [the] disease."  65 Fed. Reg. 1000 (January 6, 2000); 21 C.F.R. § 101.93(g)(2)(iv)(A).

4.      Under California law, it is unlawful to sell any over-the-counter ("OTC") drug in California unless it: (1) has received premarket approval by the United States Food & Drug

Administration ("FDA") pursuant to a New Drug Application ("NDA") process; or (2) conforms to an approved FDA "monograph" for the particular drug category. Cal. Health & Safety Code §§ 110110 & 110111; *accord* 21 U.S.C. § 355. Although there is a monograph for products that claim to treat or mitigate eczema, the Products fail to meet the monograph's requirements. Nor have the Products been subject to an NDA. California law additionally prohibits the sale of any drug in California that is misbranded or falsely advertised. Cal. Health & Safety Code §§ 110390 & 111330.

5.     Here, Defendants include the name of the disease, eczema, in the Products' names (*e.g.*, "Eczema Creamy Oil" and "Eczema Body Wash"), thereby suggesting that the Products will treat eczema. The Products' labels and advertising materials also represent that the Products treat or mitigate eczema and affect the structure and function of "eczema-prone" skin. However, the Products have not been subject to an NDA process. Nor do they comply with the monograph for eczema drugs as none of the Products contain colloidal oatmeal as an ingredient. Thus, the Products are unlawfully sold as drugs in California, and are misbranded and falsely advertised.

6.     Defendants' conduct is likely to deceive members of the public. The Legislature's decision to prohibit a particular misleading advertising practice is evidence that the Legislature has deemed that the practice constitutes a material misrepresentation. California law prohibits the practice of misrepresenting products as drugs that treat or mitigate diseases. Accordingly, Defendants' violations of California law are *per se* material misrepresentations. Moreover, Defendants' drug claims are likely to deceive and did deceive Plaintiff that the Products are drugs that are effective for the treatment of eczema when, in fact, the Products are no more effective at treating eczema than other similar and less expensive products that do not make such claims.

7.     Defendants' conduct of advertising, marketing, selling, labeling, and representing that the Products are drugs that treat or mitigate eczema and its symptoms, when, in fact, the Products cannot lawfully be sold as drugs and are not approved by FDA for treating or mitigating eczema, constitutes unlawful, unfair, and deceptive conduct. As such, Defendants' conduct violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

1    (hereinafter the "CLRA"), the California False Advertising Law, Cal. Bus. & Prof. Code § 17500,

2    *et seq.* (hereinafter the "FAL"), California's common law prohibition of unjust enrichment, and

3    California's Express Warranty Law, Cal. Comm. Code § 2313.  Accordingly, Plaintiff and

4    members of the Class seek an order enjoining Defendants' acts of unfair competition.

5        8.    Plaintiff believed Defendants' representations that the Products are drugs that

6    would that would treat or mitigate eczema and its symptoms.  Plaintiff paid a significant premium

7    for the Products based on the Products' representations regarding the treatment of eczema.

8    Indeed, Defendant sells the Products at a significant premium over other similar products it sells

9    with nearly identical ingredients that do not claim to cure or mitigate the symptoms of eczema.

10   Thus, Plaintiff seeks damages under the CLRA based on the premium paid by Plaintiff and the

11   Class and restitution of Defendants' ill-gotten gains resulting from their unlawful, deceptive, and

12   unfair representations under the UCL.

13                                   **<u>PARTIES</u>**

14       9.    Plaintiff Dustin Magill is a resident of Burlingame, California.  On April 17, 2018,

15   Plaintiff purchased Defendants' Eczema Soothing Body Wash at a CVS drugstore in Burlingame.

16   The front label of the Product, which Plaintiff reviewed prior to purchase, prominently displays

17   the words "Eczema Soothing."  At the time of purchase, Plaintiff reasonably believed based on the

18   front label that the Product would treat or mitigate eczema and its symptoms.  Plaintiff also

19   reasonably believed that the Product was being lawfully sold for eczema treatment or mitigation.

20   The Product was completely ineffective at treating or mitigating Plaintiff's eczema.  Had Plaintiff

21   known that the Products do not contain any ingredient that has been approved by FDA for treating

22   or mitigating eczema, and that the Products could not lawfully be sold as eczema drugs, Plaintiff

23   would not have paid more for the Products than the cost of other skin care products that do not

24   claim to treat or mitigate eczema.

25       10.   Defendant L'Oreal USA, Inc. is the United States affiliate of France-based L'Oreal

26   Group.  L'Oreal USA, Inc. maintains its headquarters in New York, New York.  L'Oreal

27   advertises, markets, distributes, and sells the Products in California.  Defendant L'Oreal USA, Inc.

28   purchased the CeraVe® brand from Valeant Pharmaceuticals in January 2017.

11.     Defendant Bausch Health Companies Inc. is the successor to Valeant Pharmaceuticals, which sold and marketed the Products up through January 2017.  Defendant Bausch Health Companies Inc. maintains its headquarters in Bridgewater, New Jersey.

12.     DOES 1 through 20 are persons or entities whose true names and capacities are presently unknown to Plaintiff, and who therefore are sued by such fictitious names.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants perpetrated some or all of the wrongful acts alleged herein and are responsible in some manner for the matters alleged herein.  Plaintiff will amend this complaint to state the true names and capacities of such fictitiously named Defendants when ascertained.

13.     Defendant L'Oreal USA, Inc., Bausch Health Companies Inc., and DOES 1-20 are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. § 1332, as amended in February 2005 by the Class Action Fairness Act.  Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of Defendants.

15.     This Court has jurisdiction over Defendants because they are each a corporation that has sufficient minimum contacts in California or otherwise intentionally avail themselves of the California market either through the distribution, sale or marketing of the Products in the State of California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendants are residents of this District, and 28 U.S.C. § 1391(c) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

17.     **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3-5(b))**:  This action arises in San Francisco County because a substantial part of the events which give rise to the claims

asserted herein occurred in San Francisco County.

**BACKGROUND FACTS**

18.     Seeking to profit on the extremely irritating symptoms suffered by the millions of people with eczema, Defendants market the Products as drugs that will treat or mitigate eczema and its symptoms.

19.     Defendants prominently display the word "Eczema" in the largest bold print on the principal display panels ("PDP") of the Products together with representations that the Products are "Eczema Soothing," will "calm" "eczema prone skin," or other similar representations designed to proclaim that the Products will treat or mitigate eczema and its symptoms.   By using these representations on the packaging, Defendants are representing to consumers that the Products will treat or mitigate eczema and that the Products are superior to other products on the market that do not make such claims.   The Products are thus unlawfully and deceptively marketed as drugs that will treat or mitigate eczema and its symptoms, when the Products in fact do not contain any ingredient that has been approved by FDA for treating or mitigating eczema.

20.     The Products are not drugs approved for the treatment or mitigation of eczema.   To the extent the Products provide any relief for eczema, they are no more effective at doing so than comparable and less expensive products that, like the Products, contain no ingredients that are approved by FDA for eczema treatment, but, unlike the Products, make no such labeling or advertising claims.

21.     California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law") has adopted federal nonprescription drug regulations as California's non-prescription drug regulations. Cal. Health & Safety Code § 110111.   The Sherman Law makes it unlawful to sell any drug in California that is misbranded or falsely advertised.   Cal. Health & Safety Code §§ 110390 & 111330.   A drug is misbranded and falsely advertised when its labeling or advertising is "false or misleading in any particular."   *Id.*

22.     A manufacturer seeking premarket approval of a new OTC drug must submit a detailed new drug application ("NDA"), which must include, among other things, clinical studies demonstrating the drug's safety and effectiveness.   21 U.S.C. § 355(d).   An OTC drug that is not

the subject of a NDA is not generally recognized as safe and effective and is misbranded and falsely advertised unless it meets each of the conditions contained in FDA's OTC drug regulations and each of the conditions in an applicable monograph.  *See* 21 C.F.R. § 330.1; Cal. Health & Safety Code § 111550.

23.     FDA has issued a monograph for OTC eczema drug products.  *See* 21 C.F.R. Pt. 347.  Through this monograph, FDA has determined that the only products for OTC drug use that can include claims regarding the treatment or mitigation of eczema and its symptoms are those containing colloidal oatmeal in specified minimum percentages as an active ingredient.  21 C.F.R. §§ 347.10(f), 347.50(b)(4).  Thus, under California and federal law, a product that does not include colloidal oatmeal as an active ingredient, and that is labeled with a claim regarding the treatment or mitigation of eczema, is not recognized as safe and effective for its intended use and is misbranded and falsely advertised.  21 C.F.R. § 330.1; *see* Cal. Health & Safety Code § 111550.

24.     None of the Products have received FDA approval via NDAs.

25.     None of the Products meet the conditions in FDA's monograph for OTC eczema drugs.  Specifically, none of the Products contain colloidal oatmeal.  Nor do any of the Products contain any other ingredients that are approved by FDA for OTC human use as treating or mitigating eczema and its symptoms.

26.     "Drugs" are defined as products that are intended to: (1) treat or mitigate a disease; or (2) affect the structure or function of the body.  Cal. Health & Safety Code § 109925(a)(2) & (3); 21 U.S.C. § 321(g)(1)(B) & (C).  Whether a product qualifies as a drug depends on its intended use as defined by the claims made on or about such product.  Cosmetics are also defined and regulated based on the claims made on such products.  *See* Cal. Health & Safety Code § 109900.  Moreover, marketing and labeling claims regarding a product can render the product both a drug and a cosmetic.  *See* FDA Guidance, *Is It a Cosmetic, a Drug, or Both? (Or Is It Soap?).*[1]  Such products must comply with the laws and regulations for both drugs and cosmetics.  *Id.*

---

[1] Available at: https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm (last visited January 25, 2019).

27.     Identifying a specific disease on the PDP of a consumer product constitutes a claim that such product is a cure or treatment for that disease.  21 C.F.R. § 101.93(g)(2)(iv)(A); 65 Fed. Reg. 1000 (January 6, 2000).  This makes sense given that including the name of a disease in the product name suggests that the product is a cure.  Defendants' prominently place the word eczema on the PDP of each Product.  Defendants' eczema-related claims cause the Products to be drugs because Defendants state and imply that the Products are intended for use in the cure, mitigation, treatment, or prevention of disease, and are intended to affect the structure or function of the human body, such as skin.  The Products are also drugs because consumers will perceive Defendants' eczema-related claims as an indication that the Products will treat or mitigate consumers' eczema.  Thus, Defendants' use of the word "Eczema" on the PDP for the Products constitutes a representation that the Products will treat or mitigate eczema.

28.     The term, "mitigation" is generally defined as "lessening the force or intensity of something unpleasant . . .," "making a condition . . . less severe," or "the process of becoming milder, gentler, or less severe."[2]  By stating that the Products are "Eczema Soothing," and will "calm . . . eczema prone skin," Defendants are communicating to consumers that the Products will mitigate their eczema.

29.     Defendants sell other products that, like the Products, identify a specific disease on the PDP.  These products, such as the CeraVe® Psoriasis Cleanser and CeraVe® Psoriasis Moisturizing Cream, contain the active ingredient approved for the treatment of the disease identified, psoriasis, and are thus properly sold as drugs under the Sherman Law.

30.     Defendants know that use of the word "Eczema" on the front label of the Products misleads consumers into believing the Products will treat or mitigate eczema.  Indeed, as evidenced by Defendants' psoriasis products, Defendants know and intend that consumers will believe that a product that specifies a disease in the product name is a treatment and cure for that disease.

31.     Defendants' ongoing practice of advertising, marketing, labeling, selling, and representing that the Products are drugs for the treatment or mitigation of eczema and its

_____

[2]  Available at: https://www.dictionary.com (last visited January 25, 2019).

symptoms, when in fact they are not, is likely to deceive ordinary consumers of the Products and has in fact deceived Plaintiff.  The eczema-related claims made by Defendants are uniform, consistent, and material on all of the Products.

32.     Plaintiff reasonably understood the labeling of the Products to mean that the Products are lawfully sold as drugs that will treat or mitigate eczema and its symptoms.  In reliance on Defendants' claims, Plaintiff paid a significant premium for the Products in comparison to similar skin care products that do not make eczema treatment claims.  The Products were wholly ineffective for Plaintiff's eczema.

33.     Indeed, Defendants sell other Products with almost identical ingredients including all of the ingredients Defendants claim have palliative effects on the skin.  These products do not, however, claim to treat or mitigate eczema.  Defendants charge substantially more for their Products that make eczema claims.

34.     Plaintiff and members of the Class have suffered injury in fact and have lost money or property because they paid a significant premium for the Products as a direct result of Defendants' unlawful, false, misleading, deceptive, and unfair representations that the Products would treat or mitigate eczema and its symptoms.

35.     Plaintiff continues to desire to purchase products for the treatment or mitigation of his eczema and its symptoms.  Plaintiff would like to buy products manufactured by Defendants in the future, but is unable to determine with confidence, based on the labeling and other marketing materials, whether the Products are drug products that are approved for eczema treatment or mitigation.

36.     Defendants know that there is a high demand for relief from eczema.  Defendants' scheme to exploit consumer demand for eczema relief by falsely advertising the Products as treating or mitigating eczema has been extraordinarily successful.  Defendants have profited enormously from their unlawful, false, and misleading representations that the Products are drugs that treat or mitigate eczema and its symptoms.  The purpose of this lawsuit is to put an end to Defendants' unlawful and deceptive marketing of the Products.  This action also seeks to recover

1   the significant premium paid by Plaintiff and the Class for the Products as well as the

2   disgorgement of Defendants' profits obtained through sale of illegal Products.

3        37.     Plaintiff has engaged in good-faith efforts to resolve the claims alleged herein prior

4   to filing this complaint.  On November 15, 2018, Plaintiff served Defendant L'Oreal, USA, Inc.

5   ("L'Oreal") with a demand letter informing it of Plaintiff's claims and that, unless L'Oreal took

6   remedial action within 30-days of the date of the notice, Plaintiff would file a lawsuit and seek

7   damages pursuant to Cal. Civil Code § 1782.  L'Oreal did not agree to undertake the actions

8   demanded in the letter.

9        38.     On January 11, 2019, Plaintiff served a similar letter pursuant to Cal. Civil Code §

10  1782 on Defendant Bausch Health Companies Inc. ("Bausch").  Bausch did not agree to undertake

11  the actions demanded in the letter.

12                              **CLASS ALLEGATIONS**

13       39.     Plaintiff brings this suit individually and as a class action pursuant to Federal Rule

14  of Civil Procedure Rule 23, on behalf of Himself and the following Class of similarly situated

15  individuals:

> All persons who purchased the Products in California during the
> applicable statute of limitations period (the "Class").  Specifically
> excluded from the Class are Defendants; the officers, directors or
> employees of Defendants; any entity in which Defendants have a
> controlling interest; and any affiliate, legal representative, heir or
> assign of Defendants.  Also excluded are any judicial officer
> presiding over this action and the members of his/her immediate
> family and judicial staff, and any juror assigned to this action.

20       40.     Plaintiff is unable to state the precise number of potential members of the proposed

21  Class because that information is in the possession of Defendants.  The exact size of the proposed

22  Class and the identity of its members will be readily ascertainable from the business records of

23  Defendants and Defendants' retailers as well as Class members' own records and evidence.

24  Nevertheless, the number of Class members who purchased Defendants' Products during the

25  statutory period is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1).

26  CeraVe® is a popular brand and the Products are sold throughout California.  Thus, joinder of

27  such persons in a single action or bringing all members of the Class before the Court is

28

1   impracticable.  The disposition of the claims of the members of the Class in this class action will

2   substantially benefit both the parties and the Court.

3       41.    There is a community of interest among the members of the proposed Class in that

4   there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2),

5   including whether Defendants labels, advertisements, and packaging include uniform

6   misrepresentations that misled Plaintiff and the other members of the Class to believe the Products

7   are drugs approved to treat or mitigate eczema and its symptoms when they are not.  Proof of a

8   common set of facts will establish the liability of Defendants and the right of each member of the

9   Class to relief.

10       42.    Plaintiff asserts claims that are typical of the claims of the entire Class for purposes

11   of Rule 23(a)(3).  Plaintiff and all members of the Class have been subjected to the same wrongful

12   conduct because they have purchased the Products that are labeled and advertised as drugs

13   approved for the treatment or mitigation of eczema and its symptoms when, in fact, they are not.

14       43.    Plaintiff will fairly and adequately represent and protect the interests of the other

15   members of the Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those

16   of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this action

17   and has retained counsel experienced in complex litigation of this nature to represent him.

18   Plaintiff anticipates no difficulty in the management of this litigation as a class action.

19       44.    Class certification is appropriate under Rule 23(b)(2) because Defendants have

20   acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding

21   declaratory relief, is appropriate respecting the Class as a whole.  Defendants utilize advertising

22   campaigns that include uniform misrepresentations that misled Plaintiff and the other members of

23   the Class.

24       45.    Class certification is appropriate under Rule 23(b)(3) because common questions of

25   law and fact substantially predominate over any questions that may affect only individual

26   members of the Class.  These common legal and factual questions, which do not vary among Class

27   members and which may be determined without reference to the individual circumstances of any

28   Class member include, but are not limited to the following:

a. whether Defendants advertise, market, label, and sell the Products by representing that the Products are drugs that treat or mitigate eczema and its symptoms;

b. whether the Products may lawfully be sold as drugs under state and federal law;

c. whether Defendants' representations that the Products are drugs that treat or mitigate eczema and its symptoms are likely to deceive a reasonable consumer;

d. whether Defendants' claims that the Products are drugs that treat or mitigate eczema and its symptoms are material to a reasonable consumer of the Products;

e. whether Defendants know the Products may not lawfully be sold as drugs that treat or mitigate eczema and its symptoms;

f. whether Defendants' conduct in advertising, marketing, and labeling the Products as drugs that treat or mitigate eczema and its symptoms constitutes a violation of the UCL, the CLRA, and the FAL;

g. whether Defendants' conduct in selling Products that the Legislature has deemed misbranded constitutes material misrepresentations that are deceptive per se under California law;

h. whether Defendants' representations that the Products are drugs that treat or mitigate eczema and its symptoms constitute express warranties with regard to the Products;

i. whether Defendants breached the express warranties they made with regard to the Products;

j. whether Defendants' representations regarding the Products constitute representations that the Products have characteristics, benefits, or qualities that they do not have;

k. whether Defendants advertised their Products without an intent to sell them as advertised;

l. whether Defendants have been unjustly enriched from the sale of the Products;

m. whether punitive damages are warranted for Defendants' conduct and, if so, an appropriate amount of such damages; and

n.  whether Plaintiff and the Class members are entitled to injunctive, equitable and monetary relief.

46.    Defendants utilize marketing, advertisements, and labeling for the Products that include uniform misrepresentations that misled Plaintiff and the other members of the Class. Defendants' claims that the Products are drugs that treat or mitigate eczema and its symptoms is the most prominent feature of Defendants' marketing, advertising, and labeling of the Products. Nonetheless, the Products are not in fact drugs that treat or mitigate eczema and its symptoms. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

47.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims are concerned.  Absent a representative class action, members of the Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of their ill-gotten gains.  Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other members of the Class who are not parties to the adjudications or may substantially impede their ability to protect their interests.

**FIRST CAUSE OF ACTION**

**(Plaintiff Magill, On Behalf of Himself and the Class,
Alleges Violations of California's Consumers Legal Remedies Act –
Injunctive Relief and Damages)**

48.    Plaintiff incorporates by reference the allegations set forth above.

49.     Plaintiff purchased the Products for personal, family or household purposes. Plaintiff purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products are drugs that would treat or mitigate eczema and its symptoms.

50.     The acts and practices of Defendants as described above were intended to deceive Plaintiff and the members of the Class as described herein, and have resulted and will result in damages to Plaintiff and members of the Class.  This conduct includes, but is not limited to, misrepresenting that the Products are drugs that will treat or mitigate eczema and its symptoms. These actions violated and continue to violate the CLRA in at least the following respects:

  a. In violation of CLRA § 1770(a)(5), Defendants' acts and practices constitute representations that the Products have characteristics, uses, or benefits which they do not;

  b. In violation of CLRA § 1770(a)(7), Defendants' acts and practices constitute representations that the Products are of a particular quality which they are not; and

  c. In violation of CLRA § 1770(a)(9), Defendants' acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

51.     By reason of the foregoing, Plaintiff and the Class members have suffered damages.

52.     By committing the acts alleged above, Defendants have violated the CLRA and continue to violate the CLRA.

53.     In compliance with the provisions of California Civil Code § 1782, on November 15, 2018, Plaintiff provided written notice to L'Oreal of his intention to seek damages under California Civil Code § 1750, *et seq.*, and requested that L'Oreal offer an appropriate consideration or other remedy to all affected consumers.  As of the date of this complaint, L'Oreal has not done so.  Accordingly, Plaintiff seeks damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a) from L'Oreal.

54.     In compliance with the provisions of California Civil Code § 1782, on January 11, 2019, Plaintiff provided written notice to Bausch of his intention to seek damages under California

Civil Code § 1750, *et seq.*, and requested that Bausch offer an appropriate consideration or other remedy to all affected consumers. As of the date of this complaint, Bausch has not done so. Accordingly, Plaintiff seeks damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a) from Bausch.

55. Pursuant to California Civil Code § 1780(a)(2), Plaintiff and the Class members are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, providing actual and punitive damages and restitution to Plaintiff and the Class members, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

56. Concurrently with the filing of the original complaint, Plaintiff filed an affidavit pursuant to Civil Code § 1780(d) regarding the propriety of venue. Venue is proper pursuant to Civil Code § 1780(d) as a substantial portion of the transactions at issue occurred in this District.

## SECOND CAUSE OF ACTION

**(Plaintiff Magill, On Behalf of Himself and the Class, Alleges
Violations of California Business & Professions Code § 17200, *et seq*.
Based on Commission of Unlawful Acts)**

57. Plaintiff incorporates by reference the allegations set forth above.

58. The violation of any law constitutes an unlawful business practice under California Business & Professions Code § 17200.

59. The Sherman Law prohibits the sale of any drug that is "misbranded" or "falsely advertised." Cal. Health & Safety Code §§ 110390 & 111330. A drug is misbranded and falsely advertised if its labeling or advertising is "false or misleading in any particular." *Id.*

60. The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Safety Code § 109995.

61.     Defendants are corporations and, therefore, are each a "person" within the meaning of the Sherman Law.

62.     A product is a drug when it includes any claim that such product will: (1) treat or mitigate a disease; or (2) affect the structure or function of the body.  Cal. Health & Safety Code § 109925(a)(2) & (3); 21 U.S.C. § 321(g)(1)(B) & (C).

63.     A product that uses the name of a specific disease in its name is a drug.  65 Fed. Reg. 1000 (January 6, 2000); 21 C.F.R. § 101.93(g)(2)(iv)(A);  Cal. Health & Safety Code §§ 110100, 110110 & 110111.

64.     The Products are drugs as they use the word "Eczema" in the product name and purport to treat or mitigate eczema and its symptoms, as well as affecting the structure of the body, such as the skin.

65.     Unless a nonprescription drug is the subject of a NDA, it is misbranded unless it meets each of the conditions contained in FDA's OTC drug regulations and each of the conditions in an applicable monograph.  *See* 21 C.F.R. § 330.1.

66.     The Products are neither the subject of approved NDAs nor do they comply with the applicable monograph for eczema drugs.  The Products are therefore not generally recognized as safe and effective for the treatment or mitigation of eczema and are misbranded under federal law.  21 C.F.R. § 347.1(a).  Because the Sherman Law has adopted the federal nonprescription drug regulations as California law, California Health & Safety Code § 110111, and declares any drug to be "misbranded" and "falsely advertised" if it is "false or misleading in any particular," Defendants are in violation of the Sherman Law.  *See* Cal. Health & Safety Code §§ 110390, 111330.

67.     As detailed more fully in the preceding paragraphs, the acts and practices alleged herein also violate the CLRA as they were intended to or did result in the sale of the Products in violation of California Civil Code §§ 1770(a)(5), 1770(a)(7) & 1770(a)(9).

68.     By violating California's Sherman Law and the CLRA, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

69.     Plaintiff purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products were drugs for the treatment or mitigation of eczema when, in fact, they are not.  Plaintiff purchased the Products in reliance on Defendants' representations that the Products would treat or mitigate eczema.  Plaintiff would not have paid the significant premium for the Products over the price of similar products that do not make illegal drug claims but for Defendants' false promotion of the Products.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations.

70.     An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

### THIRD CAUSE OF ACTION

**(Plaintiff Magill, On Behalf of Himself and the Class, Alleges Violations of California Business & Professions Code § 17200, *et seq*. Based on Fraudulent Acts and Practices)**

71.     Plaintiff incorporates by reference the allegations set forth above.

72.     Under California Business & Professions Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

73.     Defendants have engaged and continue to engage in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresenting that the Products are drugs for the treatment or mitigation eczema when, in fact, they are not.  As described above, federal nonprescription drug regulations, adopted in full by California's Sherman Law, provide that all drug claims are unlawful unless they comply with an NDA or an applicable monograph.

74.     None of the Products have received FDA approval via NDAs.

75.     None of the Products meet the conditions in FDA's monograph for OTC eczema drugs.

76.     The Legislature's decision to prohibit a particular misleading advertising practice is evidence that the Legislature has deemed that the practice constitutes a material misrepresentation.

Accordingly, Defendants' violations of the Sherman Law are *per se* deceptive under California law.

77.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

78.     Plaintiff purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products were drugs for the treatment or mitigation of eczema when, in fact, they are not.  Plaintiff purchased the Products in reliance on Defendants' representations that the Products would treat or mitigate eczema.  Plaintiff would not have paid the significant premium for the Products over the price of similar products that do not make illegal drug claims but for Defendants' false promotion of the Products.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations.

79.     An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

## FOURTH CAUSE OF ACTION

**(Plaintiff Magill, On Behalf of Himself and the Class, Alleges**
**Violations of California Business & Professions Code § 17200, *et seq*.**
**Based on Unfair Acts and Practices)**

80.     Plaintiff incorporates by reference the allegations set forth above.

81.     Under California Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous, or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

82.     Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an

injury that consumers themselves could not reasonably have avoided.  Defendants' conduct is unfair under each of these tests.

83.     Defendants have engaged, and continue to engage, in conduct that violates the legislatively declared policy of the Sherman Law against the misbranding and false advertising of nonprescription drugs and against selling a drug without FDA approval.  Cal. Health & Safety Code §§ 111330, 110390, & 111550.  Defendants have further engaged, and continue to engage, in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits, and quality of goods for sale.  Defendants gain an unfair advantage over their competitors, whose advertising must comply with the Sherman Law and CLRA.

84.     Defendants have engaged, and continue to engage, in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  This conduct includes, but is not limited to, misrepresenting that the Products are drugs that treat or mitigate eczema, even though they are not.  The gravity of harm caused by Defendants' conduct as described herein far outweighs the utility, if any, of such conduct.

85.     Defendants' have engaged, and continue to engage, in conduct that is substantially injurious to consumers.  This conduct has and continues to cause substantial injury to consumers because consumers would not have paid a premium for the Products over other products that do not claim to be eczema drugs, but for Defendants' false promotion of the Products as drugs for the treatment or mitigation of eczema.  Consumers have thus overpaid for the Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendants' conduct.  Because consumers reasonably rely on Defendants' representations regarding the Products, and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.

86.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

87.     Plaintiff purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products were drugs for the treatment or

mitigation of eczema when, in fact, they are not.  Plaintiff purchased the Products in reliance on Defendants' representations that the Products would treat or mitigate eczema.  Plaintiff would not have paid the significant premium for the Products over the price of similar products that do not make illegal drug claims but for Defendants' false promotion of the Products.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations.

88.     An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

**FIFTH CAUSE OF ACTION**

**(Plaintiff Magill, On Behalf of Himself and the Class, Alleges
Violations of California's False Advertising Law, Cal. Business & Professions Code § 17500)**

89.     Plaintiff incorporates by reference the allegations set forth above.

90.     As alleged more fully above, Defendants have falsely advertised the Products by falsely claiming that they are drugs for the treatment or mitigation of eczema and its symptoms.

91.     Defendants know, or by the exercise of reasonable care should know, that the eczema-related drug claims they make regarding their Products are unlawful, untrue and misleading.  Defendants' violations of the FAL continue to this day.

92.     Plaintiff purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products were drugs for the treatment or mitigation of eczema when, in fact, they are not.  Plaintiff purchased the Products in reliance on Defendants' representations that the Products would treat or mitigate eczema.  Plaintiff would not have paid the significant premium for the Products over the price of similar products that do not make illegal drug claims but for Defendants' false promotion of the Products.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations.

**SIXTH CAUSE OF ACTION**

**(Plaintiff Magill, on Behalf of Himself and the Class, Alleges Breach of Quasi-
Contract/Unjust Enrichment)**

93.     Plaintiff incorporates by reference the allegations set forth above.

94.     Plaintiff and the Class members conferred benefits on Defendants by purchasing

-19-

the Products.

95.     Defendants have knowledge of such benefits.

96.     Defendants voluntarily accepted and retained the benefits conferred.

97.     Defendants have been unjustly enriched in retaining the profits and revenues derived from Plaintiff's and the Class members' purchases of the Products.

98.     Retention of that money under these circumstances is unjust and inequitable because Defendants illegally, falsely, and misleadingly represented through their labeling, advertising and marketing materials that the Products are drugs for the treatment or mitigation of eczema, when they are not.

99.     These misrepresentations caused injuries to Plaintiff and the Class members because they would not have paid the significant premium for the Products over the price of similar products that do not make illegal drug claims but for Defendants' false and illegal promotion of the Products.

100.    Because Defendants' retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Defendants ought to pay restitution to Plaintiff and the Class members for its unjust enrichment.

101.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself and the Class, Alleges Breach of Express Warranty)**

102.    Plaintiff incorporates by reference the allegations set forth above.

103.    The California Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

104.    As detailed above, Defendants marketed and sold the Products as drugs that treat or mitigate eczema and its symptoms.  These representations constitute affirmations of fact made with regard to the Products as well as descriptions of the Products.

105.    Defendants' misrepresentations regarding the Products are uniformly made on the

1   Products' labeling and packaging materials, and in the Products' advertising, internet sites and

2   other marketing materials, and are thus part of the basis of the bargain between Defendants and

3   purchasers of the Products.

4       106.    At the time that Defendants manufactured, sold, and distributed the Products,

5   Defendants knew that the Products could not lawfully be sold as drugs that treat or mitigate

6   eczema and its symptoms.

7       107.    As set forth in the paragraphs above, the Products are not drugs that treat or

8   mitigate eczema and its symptoms and thus do not conform to Defendants' express representations

9   to the contrary.  Defendants have thus breached its express warranties concerning the Products.

10      108.    Plaintiff sent presuit demand letters to Defendants notifying Defendants that the

11  Products cannot lawfully be sold as drugs that treat or mitigate eczema and its symptoms.

12  Defendants therefore have actual and constructive knowledge that the Products were not sold as

13  marketed and advertised.

14      109.    As a direct and proximate result of Defendants' breach of express warranties,

15  Plaintiff and Class members have suffered damages.

16                          **PRAYER FOR RELIEF**

17      WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

18      A.      That the Court declare this a class action;

19      B.      That the Court preliminarily and permanently enjoin Defendant L'Oreal USA, Inc.

20  from conducting its business through the unlawful, unfair, or fraudulent business acts or practices,

21  untrue, and misleading advertising, and other violations of law described in this complaint;

22      C.      That the Court order Defendants to conduct a corrective advertising and

23  information campaign advising consumers that the Products do not have the characteristics, uses,

24  benefits, and quality Defendants have claimed;

25      D.      That the Court order Defendant L'Oreal USA, Inc. to cease and refrain from

26  labeling and marketing the Products to state or imply that the Products are drugs for the treatment

27  or mitigation of eczema and its symptoms;

28      E.      That the Court order Defendants to implement whatever measures are necessary to

1  remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading

2  advertising and other violations of law described in this complaint;

3       F.     That the Court order Defendants to notify each and every Class member of the

4  pendency of the claims in this action in order to give such individuals an opportunity to obtain

5  restitution and damages from Defendants;

6       G.     That the Court order Defendants to pay restitution to restore to all Class members

7  all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair

8  or fraudulent business act or practice, untrue, or misleading advertising, plus pre- and post-

9  judgment interest thereon;

10       H.     That the Court order Defendants to disgorge all money wrongfully obtained and all

11  revenues and profits derived by Defendants as a result of their acts or practices as alleged in this

12  complaint;

13       I.     That the Court award damages to Plaintiff and the Class to compensate them for the

14  conduct alleged in this complaint;

15       J.     That the Court award punitive damages pursuant to California Civil Code §

16  1780(a)(4);

17       K.     That the Court grant Plaintiff his reasonable attorneys' fees and costs of suit

18  pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the

19  common fund doctrine, or any other appropriate legal theory; and

20       L.     That the Court grant such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:    February 11, 2019                    Respectfully submitted,

LEXINGTON LAW GROUP

_/s/_    Mark N. Todzo
Mark N. Todzo (State Bar No. 168389)
Lucas Williams (State Bar No. 264518)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
lwilliams@lexlawgroup.com

Attorneys for Plaintiff
DUSTIN MAGILL